## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT RANDALL ZIEGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-13-0013-HE |
| | ) | (consolidated number) |
| UNKNOWN SUCCESSORS OF | ) | |
| JENO F. PAULUCCI, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ROBERT RANDALL ZIEGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-13-0796-HE |
| | ) | |
| BEVERLY JOHNSON, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### **ORDER**

Plaintiff Robert Randall Ziegler, a state prisoner appearing *pro se*, has filed two cases arising out of substantially the same set of circumstances—his dealings with Jeno F. Paulucci ("Mr. Paulucci" or "the decedent"), the death of Mr. Paulucci, and the administration of his estate. In Case No. CIV-13-0013-HE, plaintiff has sued "Unknown Successors of Jeno F. Paulucci"; Cheri Swenson, the decedent's personal assistant; Jill Molitor; Paulucci International, a Florida Corporation; and "the Trustee of the Estate of Jeno F. Paulucci" ("the Trustee"). In the second case, styled 13-CIV-00796, plaintiff has sued Beverley Johnson, Paulucci International, and Jena Paulucci. In both cases, plaintiff alleges claims for breach

of contract related to alleged promises made by the decedent to plaintiff.

In 13-CIV-0013-HE, Paulucci International has moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In 13-CIV-00796-HE, Pauluuci International and the Trustee have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which motion was joined by Jill Molitor. The "Unknown Successors," now known as Michael Paulucci and Cynthia Selton, have moved to dismiss on the same grounds. Plaintiff has responded, and the motions are at issue.[1]

Background

Plaintiff is serving a life sentence plus 115 years in Oklahoma for various offenses. *See* Ziegler v. State, 610 P.2d 251 (Okla. Crim. App. 1980). Jeno F. Paulucci was a successful businessman and entrepreneur known for, among other things, creating the frozen food line sold today as Totino's Pizza Rolls.[2] Mr. Paulucci passed away in late 2011. According to the complaint, plaintiff's grandmother and Mr. Paulucci were good friends. This apparently led to several communications between plaintiff and Mr. Paulucci, by mail, in which Mr. Paulucci allegedly agreed to 1) purchase paintings made by plaintiff while in prison, 2) pay for plaintiff's legal representation, and 3) give plaintiff a sum of money if and when he was released from prison. Plaintiff alleges that after Mr. Paulucci's death, he

---

[1] Beverley Johnson, Jena Paulucci, and Cheri Swenson have not yet been served with process.

[2] T. Rees Shapiro, *Jeno Paulucci, pioneer of frozen-food business, dies at 93*, WASH. POST, Nov. 30, 2011, http://www.washingtonpost.com/local/obituaries/jeno-paulucci-food-visionary-behind-the-pizza-roll-dies-at-93/2011/11/30/gIQAkU4XEO_story.html.

2

contacted the defendants to enforce the alleged promises, which they either ignored or refused to perform. Plaintiff eventually filed these cases, claiming breach of contract and "conspiracy to breach promises."

Discussion

*Consolidation*

Pursuant to Fed. R. Civ. P. 42(a)(2), these two cases should be consolidated. Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." *Id.* "Under this rule, a district court may consolidate related cases *sua sponte*." Kayten on behalf of Molycorp, Inc. v. Bhappu, No. 13-CV-3155-WJM-CBS, 2013 WL 6499057 (D. Colo. Dec. 11, 2013) (citing Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 130 (2d Cir.1999)). Before consolidating cases, a court must consider both judicial economy and fairness to the parties. *See* Harris v. Illinois–California Express, Inc., 687 F.2d 1361, 1368 (10th Cir.1982).

These two cases involve the same questions of fact and law. Indeed, in the complaint for the second case, plaintiff acknowledges that his motivation for filing the second action was to recover the same money he seeks in the first action. [13-0796, Doc. #1, pg. 6].

Consolidation of the cases will also serve judicial economy, as it will eliminate the need for the court to address and rule on substantially the same issues in different cases. There is no apparent prejudice to any party.

Accordingly, the cases are consolidated. The cases will proceed under 13-CIV-0013-HE.

*Motions to dismiss*

Defendants argue plaintiff's claims should be dismissed for failure to state a claim for which relief can be granted, and for lack of personal jurisdiction. They argue that the alleged communications between plaintiff and Mr. Paulucci did not create any enforceable contract. They further assert that plaintiff has failed to demonstrate sufficient minimum contacts of the defendants with Oklahoma to be a basis for the exercise of personal jurisdiction.

Rule12(b)(6) permits a court to dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and construed in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). Unsupported, conclusory allegations, however, need not be accepted as true. *See* Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pro se litigant's pleadings are liberally construed and held to a less stringent standard than those prepared by lawyers. Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991).

To obtain personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the Due Process clause of the Fourteenth Amendment. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). As Oklahoma permits the exercise of jurisdiction to the full extent allowed

by the Constitution, the question becomes whether maintenance of the suit satisfies due process requirements. *Id.* Due process is not offended by the exercise of jurisdiction over a nonresident defendant so long as that defendant has "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The minimum contacts standard may be met by a showing of a basis for either general or specific jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090-91 (10th Cir. 2010). Jurisdiction is specific if the defendant has directed his actions at residents of the forum state and the suit arises out of or is related to the defendant's contacts with that state. *Id.* Jurisdiction is general if it does not arise directly from a defendant's forum-related activities, but is based on the defendant's "general business contacts with the forum state." *Id.* at 1091.

Whether a nonresident defendant has the necessary minimum contacts with the forum state is determined based on the particular facts of each case and plaintiff has the burden of establishing the jurisdictional facts. Benton v. Cameco Corp., 375 F.3d 1070 (10th Cir. 2004). When the jurisdictional question is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing; all factual disputes are resolved in the plaintiff's favor. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008).

"[T]he 'minimum contacts' standard requires, first, that the out-of-state defendant

must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities. *Id.* at 1071 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). In addition, "exercising personal jurisdiction over defendants must always be consonant with traditional notions of fair play and substantial justice." *Id.*

"[I]n contract cases . . . [the court] sometimes ask[s] whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* "'Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.'" Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1535 (10th Cir.1996) (quoting Rambo v. American Southern Ins. Co.,839 F.2d 1415, 1420 (10th Cir.1988)). "[T]he mere foreseeability of consequences within the forum state, without more, is insufficient as a basis for jurisdiction." *Id.*

The individual defendants argue that they have no contacts with Oklahoma sufficient to support jurisdiction, and the court agrees. All of the individual defendants are residents of either Florida or Minnesota. The only allegations plaintiff makes that are related to Oklahoma are that he is incarcerated in Oklahoma and that he and the decedent communicated through letters while plaintiff was here. This is not enough to show the necessary minimum contacts by the individual defendants with Oklahoma. The claims

against those defendants will be dismissed.[3]

The circumstances are somewhat different as to the corporate defendant, Paulucci International. It is conceivable that, as an international corporation, Paulucci International does sufficient business within Oklahoma to make general jurisdiction as to it proper. However, even assuming a basis for jurisdiction, the complaint fails to state a claim against the corporation. The complaint asserts only that Mr. Paulucci made various alleged promises to plaintiff. It does not allege a basis for concluding that Paulucci International was in any way a party to the agreement or otherwise responsible for any breach of it. Plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 547. The claims against Paulucci International will therefore be dismissed.

Similarly, as to the claims against the Trustee, the complaint fails to state a claim.[4] Plaintiff alleges that Mr. Paulucci promised to 1) purchase paintings made by plaintiff while in prison, 2) pay for plaintiff's legal representation, and 3) give plaintiff a sum of money if he was ever released from prison. Each of these promises was either a gratuitous gift not arising to the status of an enforceable contract or, even if a contract be assumed, was subject

---

[3]*Although not all of the individual defendants have been served or have filed motions to dismiss, a court may sua sponte dismiss a case for jurisdictional deficiencies "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting Fratus v. DeLand, 49 F.3d 673, 674-75 (10th Cir. 1995)). Those factors are present here.*

[4]*The court assumes, without deciding, that Mr. Paulucci's correspondence with plaintiff create sufficient contacts with Oklahoma to support the exercise of personal jurisdiction over him and his estate.*

to a condition precedent that was never met.[5]

As to the paintings, the complaint alleges Mr. Paulucci agreed to make an initial $5,000 payment to plaintiff and said he would consider an additional $5,000 payment if plaintiff was released from jail. *See* [13-0013, Doc. #14, exhibit H] ("Then if [the attorney] gets you out, I will consider the other $5,000 or part of it, especially if he gets you free in 60 days."). The initial $5,000 payment was made, *see* [13-0013, Doc. #14, exhibit X], but plaintiff has not been released from jail. Any agreement to pay a second $5,000 was therefore subject to a condition precedent that was not met.

As to the legal representation claim, the allegations establish Mr. Paulucci's promise was subject to a specific attorney agreeing to take the case. *See* Letter from Jeno Paulucci to Robert Ziegler (Sept. 28, 1995) [13-0013, Doc. #14, exhibit G] ("I know what his fee is and I told him I'd be glad to cooperate once he's ready, but he isn't ready now."). Plaintiff's allegations fail to show that the condition precedent, i.e. the attorney agreeing to take the case, was ever met. *See* Letter from Robert Ziegler to Jeno Paulucci (Aug. 1, 2001) [13-0013, Doc. #14, exhibit V] ("[The attorney] told me that he wasn't ready for the money yet, in fact he said health problems, to [sic] much of a case load, that I might have to have you pay the money to another attorney . . . .") & Letter from Robert Ziegler to Jeno Paulucci (July 7, 2011) [13-0013, Doc. #14, exhibit W] ("I tried to get [the attorney] to call you but he told

---

[5]*"A condition precedent in a contract is the typical kind. It must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies. A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual duty arises."* 13 Williston on Contracts § 38:7 (4th ed.).

me . . . that you were aware that he would advise you when he was ready to work on my case.").

Further, the alleged facts show the promise to pay plaintiff's legal fees to have been made without consideration. "A promise made without supporting consideration is unenforceable." Powers Restaurants, Inc. v. Garrison, 465 P.2d 761, 763 (Okla. 1970) (citing Louthan v. Johnson, 239 P. 173 (Okla. 1925)). Consideration requires either a "benefit to the promisor or detriment to the promisee." *Id.* Here, there was neither a benefit to Mr. Paulucci nor a detriment to plaintiff sufficient to show consideration. As a result, the promise does not constitute an enforceable contract.

The promise to give money to plaintiff once he was released from prison is similarly unenforceable. The condition precedent was never met as plaintiff is still in prison. *See* Letter from Jeno Paulucci to Robert Ziegler (Dec. 27, 2004) [13-0013, Doc. #14, exhibit N] ("You can use this letter [as evidence of my agreement to pay you $7,500] with anyone when you get out.") (emphasis added).

As plaintiff's allegations against the Trustee/estate do not state a claim, all claims against the Trustee will be dismissed.

For the reasons stated, **CIV-13-0013-HE** is hereby **CONSOLIDATED** with **CIV-13-0796-HE**. The clerk is directed to close civil case number **CIV-13-0796-HE**.

The motions to dismiss on behalf of Paulucci International [13-0796, Doc. #23], Paulucci International and the Trustee of the Estate of Jeno F. Paulucci [13-0013, Doc. #45], the Unknown Successors of Jeno F. Paulucci [13-0013, Doc. #40], and Jill Molitor's motion

[13-0013, Doc. #46] are **GRANTED**, and all claims against them are **DISMISSED**. Additionally, the claims against Cheri Swenson, Jena Paulucci, and Beverley Johnson are **DISMISSED** *sua sponte* for lack of personal jurisdiction. Plaintiff's motion to strike defendants' pleadings [13-0013, Doc. #65] is **DENIED**. Paulucci International and the Trustee of the Estate of Jeno F. Paulucci's motion for extension of time [13-0013, Doc. #68] is **STRICKEN AS MOOT**.

As the deficiencies noted here do not appear to be remediable by amendment, judgment will enter separately in defendants' favor.

**IT IS SO ORDERED**.

Dated this 8th day of April, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE